United States District Court
Middle District of Florida
Jacksonville Division

2014 MAY -5  PM 3: 10

Thomas R. Jones, Plaintiff
Vs
S.L. Brown, et al Defendants
Case No 3:11-CV-00865-J-34PDB

Plaintiff, Thomas R. Jones response to the defendants counsel nuisance remarks regarding this honorable court order of the possibility of settling the case privately.

On March 20th, 2014 the plaintiff sent a certified letter to both the defendants and this honorable court with my request to the possibility of settling this case privately (see exhibit 1) in which the defendants counsel says he never received (see exhibit 2). After reviewing the J.S.O. policy to response (see exhibit 3) and doing even more research on the long term effects of concussions, I Thomas R. Jones plaintiff in this case demand that either the defendants reward the plaintiff $1.5 million in damages or again have this honorable court grant my original demand for speedy jury trial; therefore allowing jurors to determine the value of this serious matter. This case has been ongoing for plaintiff too long and we would like some closure as soon as possible. So if this honorable court could please step in and expedite this process, I the plaintiff will be grateful. If the defendants and their counsel want to continue to claim that this case has only nuisance value, I would like to bring Deborah Williams, M.D. into this case whom was the medical provider to the injuries sustained (see exhibit 4).

Respectfully submitted

Thomas R. Jones
4/9/14

United States District Court
Middle District of Florida
Jacksonville Division


Thomas Renaldo Jones, Plaintiff
Vs
S.L. Brown, et at Defendants
Case No 3:11-CV-865-J-4PDB

    After having psychological and emotional evaluation done by one Phillip R Yates, PhD Pa, and doing intense research on the long term effects after suffering a concussion after being beaten by the defendants in this case while handcuffed and already in custody (see exhibit 1 medical report) and after the defendants and their counsel have lied while under oath stating that the plaintiff never requested medical attention at the time of the beating (listen to exhibit 2) the audio tape that the defendants counsel said does not exist (see exhibit 3) it has been determined that the defendants should be willed to award the plaintiff punitive and compensatory damages jointly and severally for the physical and emotional injuries sustained as a result of the defendants action or allow this honorable court to grant the plaintiffs original complaint demanding a jury trial (see exhibit 4) and as far as the defendants counsel comment that this case has only nuisance value. I can assure this honorable court that my evidence and witness in this case can and will how otherwise.

Respectfully submitted



Thomas Jones

3/20/14





UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THOMAS R. JONES

    Plaintiff,

vs.

S.L. BROWN, et al.

    Defendants.

Case No.: 3:11-cv-00865-J-34PDB

### DEFENDANTS, J.D. CATIR, R.B. COLE, S.L. BROWN, J.S. HANSON, D.J. PERROTTI, AND K. NORTON'S RESPONSE TO THE COURT'S ORDER REGARDING THE POSSIBILITY OF SETTLEMENT

Defendants hereby respond to the Court's Order (Doc.#67), wherein the Court ordered the parties to notify it as to the possibility of settling the case privately.

On March 3, 2014 the undersigned sent a letter to Plaintiff at his address in Ohio, which letter is attached as Exhibit 1. To date, Plaintiff has made no formal demand for settlement. However, given the facts and circumstances as they have been developed in this case, Defendants continue to believe that this case has nuisance value only.

Respectfully submitted,

OFFICE OF GENERAL COUNSEL

/s/ *William B. Burkett*

WILLIAM B. BURKETT
Assistant General Counsel
Florida Bar No. 0173282
City of Jacksonville
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Phone: (904) 630-1700
Fax:     (9040 630-1316
Wburkett@coj.net
Attorney for Defendants

## LXXII.0
## RESPONSE TO RESISTANCE

"Exhibit (3)"

G. Medical Evaluation - Officers and supervisors will be required to obtain medical evaluations (JFRD, nurse at PDF, etc.) as soon as possible or practical, for individuals:

1. Who show signs of any injury as a result of any use of force being applied; ✶

2. Who complain about any injury as a result of force being applied; ✶

3. Who become unconscious either during or following the application of any force; or ✶

4. When the officer or supervisor reasonably believes an individual is in need of a medical evaluation as a result of the application of force.

NOTE: **Members shall continually monitor prisoners for symptoms of medical distress, such as: behavior indicating the person is not in touch with reality (bizarre behavior/mental confusion) and may be extremely agitated or highly aggressive; those exhibiting strength/endurance beyond what would be considered normal; profuse perspiration; and/or sudden obvious changes in their mental or physical condition. Additionally, prisoners who have exhibited these symptoms may fall "asleep" while in custody, even accompanied by loud snoring and may be difficult to wake up. If these symptoms are detected, this should be considered a MEDICAL EMERGENCY and rescue/medical assistance will be sought immediately.** NEVER DONE

[handwritten margin note: "Listen to the audio tape"]

II. **Disclaimer**

The Response to Resistance Directive is for agency use only. This agency policy should not be construed as creation of higher legal standards of care in an evidentiary sense with respect to third party claims. Violations of this directive will form the basis for agency administrative sanctions.

III. **Definitions – The following definitions apply to all Response to Resistance policies.**

A. *Non-deadly Force:* Force which is not likely to cause death or great bodily harm.

B. *Deadly Force:* Force which is intended to, or likely to, cause death or great bodily harm. Deadly force will only be used in accordance with the procedures described in Article V of this order.

C. *Probable Cause:* Exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a reasonable officer to believe that an offense has been or is being committed by a particular individual or individuals.

D. *Reasonable Belief:* Exists where the facts or circumstances the officer knows or believes to exist are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

3
*A Triple Crown Accredited Agency*

**For:** JONES, THOMAS     **Provider:** Williams, Deborah J MD

## ABOUT YOUR RESPONSIBILITIES

AFTER YOU LEAVE, YOU MUST PROPERLY CARE FOR YOUR PROBLEM AND OBSERVE ITS PROGRESS. IF YOU DO NOT IMPROVE AS EXPECTED, OR ARE WORSE, DO ONE OF THE FOLLOWING, IMMEDIATELY: CONTACT YOUR DOCTOR or FOLLOW UP DOCTOR or RETURN HERE or CALL HERE 904-244-9655

### The doctor thinks your symptoms may be due to:
### CARE OF EYE INJURIES

Keep this in mind: DIAGNOSIS WITH 100% CERTAINTY IS NOT POSSIBLE in the Emergency Department. Therefore, if you find you are not getting better, another diagnosis is possible, and you must see your doctor or return here.

**CARE OF EYE INJURIES** — It is very important that you properly care for your eye injury. These instructions are provided to assist you in that care. If you are unable to read these instructions, someone should help you with them.

### Important:

**What To Watch For** — If any of the following should occur, you should return here for further evaluation:
1. increasing or persistent eye pain
2. change in vision or loss of vision in either or both eyes
3. increasing redness, itching, or tearing
4. discharge from the eye(s)
5. swelling of the eye or lid
6. any new or unexpected problems occur

**What To Do**
1. If a patch has been applied, it should be left in place until you return for recheck. If you must drive yourself to the recheck, remove the patch before driving. If it gets loose, either re-tape the patch or return here for replacement. The patch should be comfortable, but you should not be able to open the eyelids under the patch. You may adjust the patch so that it is comfortable.
2. If a patch is in place, you have NO DEPTH PERCEPTION! Therefore, you should not drive a car, operate dangerous machinery, or any other potentially dangerous activity until both eyes are functioning.
3. In general with any eye injury, bright light can stimulate pain. Even when one eye is patched, light striking the good eye can cause pain. Therefore, we suggest you rest in a darkened area until healed.
4. If drops or ointment have been prescribed, the easiest way to apply eye medication is to lean back, look up at the ceiling, pull out the lower lid, and place the medication inside the lid. T

For further in-depth information the following web site can provide more. www.medlineplus.gov

### *** SPECIAL INSTRUCTIONS ***

- RETURN TO THE ED IMMEDIATELY IF SYMPTOMS WORSEN.
- HAVE YOUR PRESCRIPTIONS(S) FILLED IMMEDIATELY AND TAKE AS DIRECTED.
- CALL YOUR DOCTOR AS SOON AS POSSIBLE TO SCHEDULE AN APPOINTMENT.
- RETURN TO THE ED IF YOU ARE UNABLE TO SEE YOUR DOCTOR AS DIRECTED.

Patient Copy
Page 1 of 2

*Please Copy front and back. 4-3-12 TJ*

RECEIVED

PRISONERS' SELF-HELP LITIGATION MANUAL

Most courts hold that verbal abuse by itself does not violate the Constitution.[539] However, threats of force may be unconstitutional in extreme cases.[540]

### 2) Injury

Prisoners need not prove a serious or significant injury to establish an Eighth Amendment violation. The degree of injury is "relevant to the Eighth Amendment inquiry but does not end it."[541] This reasoning applies to arrestee and detainee cases as well as cases involving convicts.

Nothing in the Fourth Amendment concept of an "unreasonable" seizure requires physical injury; it simply requires unreasonableness.[542] As

---

Amendment; damages awarded); Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir. 1985) (jury question presented where legless man had been dragged out of his house without asking whether he had artificial legs or a wheelchair); Lewis v. Downs, 774 F.2d 711, 714-15 (6th Cir. 1985)(some force was justified but striking and kicking handcuffed persons was not); Martinez v. Rosado, 614 F.2d 829, 830-32 (2d Cir. 1980) (prisoners' refusal of orders did not justify an assault by officers); Brown v. Triche, 660 F.Supp. 281, 286 (N.D.Ill. 1987) (damages awarded to handcuffed inmate who was pushed against a wall, hit several times in the face and hit or kicked in the neck when he failed to sit down when ordered); Smith v. Dooley, 591 F.Supp. 1157, 1168-69 (W.D.La. 1984) (it was reasonable to use force to get an armed inmate out of his cell, but not to continue after he was disarmed and handcuffed); Bush v. Ware, 589 F.Supp. 1454, 1461-62 (E.D.Wis. 1984) (guards were justified in trying to take a metal object from a prisoner locked in his cell, but not in striking him with a flashlight and with restraining devices).

[539] Cumbey v. Meachum, 684 F.2d 712, 714 (10th Cir. 1982); Morrison v. Martin, 755 F.Supp. 683, 687 (E.D.N.C.), aff'd, 917 F.2d 1302 (4th Cir. 1990); Williams v. Pecchio, 543 F.Supp. 878, 879 (W.D.N.Y. 1982); Freeman v. Trudell, 497 F.Supp. 481, 482 (E.D.Mich. 1980). Contra, Parker v. Asher, 701 F.Supp. 192, 194 (D.Nev. 1988) ("[S]ince the purpose of the eighth amendment is to prevent prison authorities from inflicting grossly undue punishment it applies to wanton and unnecessary verbal abuse as well as physical abuse").

Some courts have held that verbal abuse is actionable in connection with actual physical abuse. Hernandez v. Denton, 861 F.2d 1421, 1423 (9th Cir. 1988), vacated on other grounds, 110 S.Ct. 37 (1989); Herrera v. Valentine, 653 F.2d 1220, 1225-26 (8th Cir. 1981). One court has held that the use of racial slurs so frequently that they create an "atmosphere of racial harassment" violates the Constitution, but the appeals court held that supervisory officials could not be held responsible unless they actually encouraged this conduct. Knop v. Johnson, 667 F.Supp. 467, 505-08 (W.D.Mich. 1987), rev'd in pertinent part, 977 F.2d 996, 1014 (6th Cir. 1992), cert. denied, 113 S.Ct. 1415 (1993); see also Finney v. Mabry, 534 F.Supp. 1026, 1043 (E.D.Ark. 1982) (racial slurs to be eliminated as part of a comprehensive injunction).

[540] Martin v. Board of County Comm'rs of Pueblo County, 909 F.2d 402, 406-07 (10th Cir. 1990) (the threat of physical coercion stated a Fourth Amendment claim where the police disregarded medical orders by arresting and moving a woman hospitalized with a neck fracture).

In a number of cases, courts have held that plausible threats of death or injury may violate the Constitution. See cases cited in § G.2.b(2) of this chapter, n. 545. The courts have disagreed whether threats of physical harm made in retaliation for prisoners' lawsuits or other constitutionally protected activities may violate the Constitution. Compare Burton v. Livingston, 791 F.2d 97, 100-01 (8th Cir. 1986); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979) with Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

[541] Hudson v. McMillian, ...

## PRISONERS' SELF-HELP LITIGATION MANUAL

for pre-trial detainees, officials are forbidden to inflict *any* punishment, not just injurious punishment, on them.[543]

The extent of injury is therefore "but one of the factors to be considered. Even if the injuries suffered 'were not permanent or severe,' a plaintiff may still recover if 'the force used was unreasonable and excessive.'"[544] Many courts have upheld constitutional claims in which no physical injury was alleged, although most such cases involve a serious threat of injury or death [545] or other extreme circumstances.[546]

---

830 F.2d 706, 712-13 (7th Cir. 1987).

[543] Williams v. Boles, 841 F.2d 181, 183 (7th Cir. 1988). The *Johnson v. Glick* due process standard, described above, cites injury only as one of four factors to be balanced.

[544] Corselli v. Coughlin, 842 F.2d at 26 (citation omitted) (jury question was presented where inmate was allegedly knocked unconscious and sustained cuts, swelling, dizziness and blurred vision); *accord*, Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991) (minor injuries are actionable when force is completely unjustified), *cert. denied*, 112 S.Ct. 1162 (1992); Gray v. Spillman, 925 F.2d 90, 93 (4th Cir. 1991) (extent of injury is relevant to damages but is not a prerequisite to suit); Campbell v. Grammer, 889 F.2d 797, 802 (8th Cir. 1989) (injuries from completely unjustified spraying with a fire hose were actionable even though not severe); United States v. Bigham, 812 F.2d 943, 949 (5th Cir.) and cases cited in n. 4 (severity of injury "tends to prove degree of force and the existence or absence of its justification"), *rehearing denied*, 816 F.2d 677 (5th Cir. 1987); Byrd v. Clark, 783 F.2d 1002, 1006 (11th Cir. 1986) (severity of injury is not determinative of constitutional violation but is probative of the amount of force used); Winder v. Leak, 790 F.Supp. 1403, 1407 (N.D.Ill. 1992) (pushing a handicapped inmate to the floor, causing pain, could violate the Eighth Amendment); Johnson v. Doherty, 713 F.Supp. 69, 71 (S.D.N.Y. 1989) (where injury is minor, court must "consider the context in which the incident occurred"); Bowman v. Casler, 622 F.Supp. 836, 838 (N.D.N.Y. 1985).

One recent decision holds that force inflicting only a *de minimis* injury can violate the Eighth Amendment if the force used is "repugnant to the conscience of mankind" or if "the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994) (en banc), *petition for cert. filed* (Sept. 12, 1994).

[545] *See, e.g.,* Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (putting a gun to a prisoner's head and threatening to kill him may violate the Eighth Amendment); Jackson v. Crews, 873 F.2d 1105, 1108 (8th Cir. 1989) (threat to break the plaintiff's neck could violate the Fourth Amendment); Wilkins v. May, 872 F.2d 190, 195 (7th Cir. 1989) (interrogation at gunpoint may deny due process), *cert. denied*, 110 S.Ct. 733 (1990); Parrish v. Johnson, 800 F.2d 600, 605 (6th Cir. 1986) (verbal threats and waving of knife violated the Eighth Amendment; damages awarded); Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (death threat made at gunpoint by a prison guard was "a wanton act of cruelty which . . . was brutal despite the fact that it resulted in no measurable physical injury"); Black v. Stephens, 662 F.2d 181, 189 (3d Cir. 1981) (damages awarded against officer who brandished a loaded gun at point-blank range), *cert. denied*, 455 U.S. 1008 (1982); Oses v. Fair, 739 F.Supp. 707, 709 (D.Mass. 1990) (Eighth Amendment was violated when an officer struck inmate with a gun, stuck gun barrel into his mouth, and made him kiss the officer's wife's shoes); Parker v. Asher, 701 F.Supp. 192, 194-95 (D.Nev. 1988) (threatening a prisoner with a taser gun solely to inflict fear stated an Eighth Amendment claim); Douglas v. Marino, 684 F.Supp. 395, 398 (D.N.J. 1988) (similar to *Parrish*); *see* Hopson v. Fredericksen, 961 F.2d 1374, 1378-79 (8th Cir. 1992) (threats unaccompanied by a weapon or physical gesture do not violate the Constitution). *Contra*, Knight v. Caldwell, 970 F.2d 1430, 1432 (5th Cir. 1992) (assault without injury accompanied by death threats did not violate the Constitution), *cert. denied*, 113 S.Ct. 1298 (1993).

[546] Hickey v. Reeder, 12 F.3d 754, 759 (8th Cir. 1993) (shooting a prisoner with a stun gun to make him clean his cell violated the Eighth Amendment); Davis v. Locke, 936 F.2d 1208, 1212 (11th Cir. 1991) (dropping a shackled inmate so he hit his head violated the

Concussions Cause Long-Term Effects Lasting Decades

Damage to the brain caused by concussion can last for decades after the original head trauma, according to research presented at the AAAS (American Association for the Advancement of Science).

Concussions causes temporary loss of brain fuction, leading to cognitive, physical and emotional symptoms, such as depression, disturbed sleep, moodiness, and amnesia.

However, even when the symptoms of a concussion appear to have gone, the brain is still not yet 100 percent normal.